UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES,

               *Petitioner*,

    -against-

JOSE WILLIAM SERNA SANCHEZ,

               *Defendant*.

19-CR-528 (ARR)

**OPINION & ORDER**

ROSS, United States District Judge:

Defendant Jose William Serna Sanchez moves to withdraw his guilty plea pursuant to Federal Rule of Criminal Procedure 11. Mr. Serna Sanchez argues that his guilty plea is invalid because he received ineffective assistance of counsel from his previous attorney and was coerced into pleading guilty.

For the reasons below, Mr. Serna Sanchez's motion to withdraw his guilty plea is denied.

## BACKGROUND

On November 13, 2019, a grand jury returned an indictment charging Mr. Serna Sanchez, a citizen of Colombia, with one count of International Cocaine Distribution Conspiracy in violation of 21 USC §§ 963, 959, 960(b)(1)(B)(ii). *See* ECF No. 1. Mr. Serna Sanchez was arrested in Ecuador on December 16, 2022, and was extradited from Ecuador to the United States to face this conspiracy charge on March 16, 2023. *See* ECF Nos. 4–8.

On March 17, 2023, Mr. Serna Sanchez was appointed an attorney from the Federal Defenders of New York, Samuel Jacobson, who conducted his initial appearance and arraignment. *See* ECF No. 12. That same day, the government, in a letter addressed to Attorney Jacobson, provided its initial discovery production under Rule 16 of the Federal Rules of Criminal Procedure,

including Mr. Serna Sanchez's statements to law enforcement, Bates-numbered SERNA 000001-000020, and his criminal history in Colombia. *See* ECF No. 10. The letter specified that the government was "not aware of any exculpatory material regarding the defendant" but would "comply with its continuing obligations to produce exculpatory material as defined by *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny." *Id.* Magistrate Judge Vera Scanlon also issued an order confirming the government's disclosure obligations under *Brady*. *See* ECF No. 11.

On April 4, 2023, the government produced its second discovery production which consisted of "documents related to the defendant's extradition," Bates-numbered SERNA 000021-000061. *See* ECF No. 16. Following the second production, parties entered in a stipulation for a protective order (the "Protection Order") regarding sensitive materials and information disclosed by the government. *See* ECF Nos. 19, 20. The Protection Order was granted by the Court on May 8, 2023, and stated that discovery materials may be used by defendant and defense counsel "only for the purposes of defending against the charges in the above captioned case, including but not limited to preparation for trial and any sentencing, appeal, or collateral attack." *Id.* Materials produced were not to be "disseminated or discussed . . . with, any individuals, organizations, or other entities." *Id.* The Protective Order also provides that no discovery materials should be transferred to substitute counsel "unless and until counsel becomes counsel of record, has been provided a copy of this Protective Order . . . and provides a signed copy . . . to the government." *Id.* Finally, the Protective Order stated that Mr. Serna Sanchez "may review Discovery Materials specifically identified by the government as sensitive discovery material . . . only in the presence of Defense Counsel or Defense Staff" and prohibited Mr. Serna Sanchez "from having possession, custody, or control of the Sensitive Discovery Material" and information and materials derived from such material. *Id.*

On May 8, 2023, the government provided Attorney Jacobson with another discovery production "consist[ing] of audio recordings, and draft transcripts, summaries and translations of audio recordings," with Bates numbers SENSITIVE SERNA000062-000180. *See* ECF No. 21. On June 8, 2023, the government provided its final Rule 16 production consisting of "draft transcripts, summaries and translations of previously-produced audio recordings," Bates-numbered SENSITIVE SERNA000181-000351. *See* ECF No. 22.

**Guilty Plea**

On November 29, 2023, the Court received a *pro se* letter from Mr. Serna Sanchez describing his personal circumstances, expressing remorse for his actions, and requesting leniency. *See* ECF No. 32. In a letter dated December 24, 2023, Mr. Serna Sanchez requested that Attorney Jacobson be removed as his attorney, and that new defense counsel be appointed. *See* ECF No. 35. The Court granted Mr. Serna Sanchez's motion, and appointed attorney John Anthony Diaz on January 10, 2024 pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A. *See* ECF No. 37. Mr. Serna Sanchez appeared with Attorney Diaz at a status conference held on January 19, 2024. *See* ECF No. 38. In a *pro se* letter dated April 19, 2024, Mr. Serna Sanchez wrote to Attorney Diaz "request[ing] to be furnished with the discovery associated with the aforementioned matter." *See* ECF No. 46. At a status conference held on April 23, 2024, a trial date was set for July 1, 2024. *See* ECF No. 42.

On May 2, 2024, the Court granted Attorney Diaz's *ex parte* motion to appoint associate counsel. *See* ECF No. 45. The motion to appoint associate counsel explained that the appointment of Sarah Speis would facilitate Mr. Serna Sanchez's review of discovery material because the Protective Order did not permit him to have direct access to sensitive discovery material without counsel present. *Id.* The motion specified that Ms. Speis had previously met with Attorney Diaz

3

and Mr. Serna Sanchez in the Metropolitan Detention Center. *Id.* Attorney Speis entered in an appearance on May 7, 2024. *See* ECF No. 47. In a *pro se* letter dated June 8, 2024, Mr. Serna Sanchez expressed concerns regarding conditions at Metropolitan Detention Center. *See* ECF No. 49.

On June 12, 2024, Mr. Serna Sanchez pled guilty to one count of International Cocaine Distribution Conspiracy. During the plea allocution, he stated that he had sufficient time to discuss his case with Attorney Diaz and was satisfied with his representation in this proceeding. *See* ECF No. 64 ("Plea Tr."). Mr. Serna Sanchez also stated on the record that he understood that pleading guilty meant that there would be no further trial of any kind and no right to appeal from a judgment of guilty. Plea Tr. at 9–10. He further stated that he had not been induced to plead guilty as a result of any fear, pressure, threat or force of any kind. *Id.* at 14–15. Mr. Serna Sanchez also provided a description of the conduct underlying his offense, stating that he "agreed with others to distribute and import [more than five kilograms of] cocaine into the United States." *Id.* at 15. Based on these answers that Mr. Serna Sanchez provided during his plea allocution, I concluded that the plea was knowing, voluntary, and factually supported. *Id.* at 15–16.

**<u>Motion to Withdraw</u>**

Following his guilty plea, Mr. Serna Sanchez filed a *pro se* letter to the Court dated July 13, 2024 requesting that Attorney Diaz be removed as his defense attorney. *See* ECF Nos. 50, 51. At a status conference held on August 7, 2024, Mr. Serna Sanchez stated that his family was gathering resources to hire a different attorney. *See* ECF No. 52.

On August 26, 2024, Mr. Serna Sanchez's current counsel, Jeffrey Cohn, entered in an appearance. *See* ECF No. 53. Nearly a year later, at a status conference held on August 20, 2025, Attorney Cohn informed the Court that he was missing certain discovery materials, including

several recorded conversations between Mr. Serna Sanchez and a government cooperator, that the government previously produced to Mr. Serna Sanchez's prior counsel. *See* ECF No. 65. At the conference, Attorney Cohn stated that Mr. Serna Sanchez had previously explained to him that the recordings would support his defense. *Id.* Furthermore, Attorney Cohn also stated that Mr. Serna Sanchez was contemplating a motion to withdraw his guilty plea, and a briefing schedule was set. *Id.* On August 20, 2025, Attorney Cohn signed the Protective Order. *See* ECF No. 66 ("Protective Order").

On August 27, 2025, Mr. Serna Sanchez filed a motion to continue and compel the production of the previously produced discovery materials, arguing that they were "critical" to his "putative motion to withdraw" because they might reveal a "viable defense to the indictment."[1] *See* ECF No. 67 ("Compel Mot."). The government filed its response in opposition to the motion to compel on August 29, 2025. *See* ECF No. 68 ("Compel Opp'n"). On September 2, 2025, Mr. Serna Sanchez filed a motion to withdraw his guilty plea pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B), notwithstanding the fact that he was still missing the discovery materials he requested from the government.[2] *See* ECF No. 69-1 ("Withdraw Mot.") at 3. In that motion, Mr. Serna Sanchez specifically stated that he had never been permitted to listen to the missing recordings with his prior counsel. *Id.* The government responded on September 8, 2025, arguing in sum that Mr. Serna Sanchez had not met his burden to show a "fair and just reason," for permitting the withdrawal. *See* ECF No. 73 ("Withdraw Opp'n.") at 3 (quoting Fed. R. Crim. P.

---

[1] As Mr. Serna Sanchez filed a motion to compel following the schedule set at the August 20, 2025 status conference, the pending motion to continue is moot.

[2] A portion Mr. Serna Sanchez's motion also invokes Federal Rule of Criminal Procedure 11(d)(1), which governs a withdrawal "before the court accepts the plea[.]" Fed. R. Crim. P. 11(d)(1). *See* Withdraw Mot. at 1. Because the plea agreement was previously accepted, the motion is properly reviewed under Fed. R. Crim. P. 11(d)(2)(B).

11(d)(2)(B)). On September 15, 2025, I ordered Mr. Serna Sanchez to request the missing recordings from defendant's previous counsel at the Federal Defenders of New York. *See* Electronic Order, dated September 15, 2025. On September 19, 2025, counsel for Mr. Serna Sanchez informed me that he received the recordings from the Federal Defenders. *See* ECF No. 70.

On October 3, 2025, with the missing discovery in hand, Mr. Serna Sanchez supplemented his pending motion to withdraw, arguing that those materials revealed a viable defense to his charge and that his prior counsel's assent to the plea constituted ineffective assistance. *See* ECF No. 72 ("Withdraw Suppl.") at 3. The government moved for an extension of time to reply and requested an order that Mr. Serna Sanchez's previous counsel submit affidavits addressing these insinuations of ineffective assistance of counsel. On October 7, 2025, I ordered Mr. Serna Sanchez's prior counsel, Samuel Jacobson and John Anthony Diaz, to submit affidavits responding to Mr. Serna Sanchez's claims. *See* Electronic Order, dated October 7, 2025.[3] Attorney Diaz submitted a declaration on October 17, 2025 ("Diaz Decl."). *See* ECF No. 77. The government submitted a supplemental response in opposition to the Motion to Withdraw on October 23, 2025. *See* ECF No. 78 ("Suppl. Opp'n"). Counsel for Mr. Serna Sanchez submitted his reply on October 31, 2025. ECF No. 81 ("Suppl. Reply").

---

[3] Following a submission from the Federal Defenders of New York on October 10, 2025 (ECF No. 75), I vacated my order as to Attorney Jacobson. *See* Electronic Order, dated October 16, 2025. On October 16, 2025, the Government submitted a letter stating that it may seek leave to renew its request for an affidavit from the Federal Defenders of New York depending on Attorney Diaz's submission. The Government requested that I renew my order as to the Federal Defenders on November 2, 2025. (ECF No. 82). I have determined that an affidavit from the Federal Defenders is not necessary to address the defendant's invocation of ineffective assistance of counsel, and therefore deny the Government's request.

## DISCUSSION

### I.    Standard of Review

Under Federal Rule of Criminal Procedure 11, a defendant may withdraw guilty plea "after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "The defendant bears the burden of showing valid grounds for withdrawal." *United States v. Albarran*, 943 F.3d 106, 118 (2d Cir. 2019) (quoting *United States v. Rivernider*, 828 F.3d 91, 104 (2d Cir. 2016)). In ruling on a motion to withdraw pursuant to Rule 11(d)(2)(B), courts consider a number of factors including:

> (1) [W]hether the defendant has asserted his legal innocence in the motion to withdraw; (2) the amount of time that has elapsed between the guilty plea and the motion (the longer the elapsed time, the less likely withdrawal would be fair and just); (3) whether the government would be prejudiced by a withdrawal of the plea. . . . [and (4)] whether the defendant has raised a significant question about the voluntariness of the original plea.

*United States v. Schmidt*, 373 F.3d 100, 102–103 (2d Cir. 2004) (internal quotations and citation omitted). Moreover, "[a] defendant is not entitled to an evidentiary hearing on the matter of withdrawal unless he presents some significant questions concerning the voluntariness or general validity of the plea." *United States v. (Jose) Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992) (quotation marks omitted). Indeed, "no hearing need be granted when the allegations on a motion to withdraw a guilty plea before sentencing merely contradict the record, are inherently incredible, or are simply conclusory." *Id.*

The Second Circuit has explained that "[t]he standard for withdrawing a guilty plea is stringent because society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice." *United States v. Rose*, 891 F.3d 82, 85 (2d Cir. 2018). Indeed, "[t]he fact that a defendant

has a change of heart prompted by his reevaluation of either the government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea." *United States v. Schmidt*, 373 F.3d at 102 (quotation marks omitted); *United States v. Albarran*, 943 F.3d at 118 (same).

## II.    Application

### 1.    Legal Innocence

"The purpose of considering legal innocence is to ensure that the defendant's reason for withdrawing his plea is 'just' and not simply a recalculation of his chances of defeating the indictment." *United States v. Farooq*, No. 19-CR-100, 2020 WL 1083624, at *3 (E.D.N.Y. Mar. 6, 2020), *aff'd*, 58 F.4th 687 (2d Cir. 2023) (quotation marks omitted and alterations adopted). "The self-inculpatory statements [a defendant] made under oath at his plea allocution 'carry a strong presumption of verity,' and the court, in reviewing the belated claims of innocence, must draw all permissible inferences in favor of the government and against the defendant." *United States v. Maher*, 108 F.3d 1513, 1530 (2d Cir. 1997) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)); *see also United States v. Wilson*, 828 F. Supp. 2d 679, 686 (S.D.N.Y. 2011) (holding that defendant's argument of legal innocence "founder[ed] because she admitted her culpability when she pled guilty" and nowhere contended that she made false statements during her plea allocution), *aff'd*, 523 F. App'x 30 (2d Cir. 2013) (summary order).

While Mr. Serna Sanchez does not expressly assert that he is "legally innocent," he repeatedly states that he has a "viable defense" to the charged crime of International Cocaine Distribution Conspiracy, 21 USC §§ 963, 959, 960(b)(1)(B)(ii). *See* Withdraw Mot. at 1. His anticipated defense concerns previously-produced recordings of conversations he had with a government cooperator that were recently provided to defense counsel by predecessor counsel.

First, he argues that a jury would not find the testimony of a government cooperator credible. *See* Withdraw Mot. at 1 ("Mr. Serna Sanchez has a viable defense on account of the revulsion and disbelief a jury will feel at the critical testimony of [the government cooperator] . . . whose cooperation has produced several absurd results of relative punishment[.]"). This argument is purely speculative. Mr. Serna Sanchez's prediction about how a jury will react to a hypothetical witness does not support his legal innocence.

Second, Mr. Serna Sanchez argues that the taped conversations between himself and the government cooperator reveal that no agreement was formed to carry out a conspiracy, and that the conspiracy was an invention of the cooperator. *See* Withdraw Suppl. at 3 ("These recordings . . . do in fact provide a defense: no agreement was ever reached to form the conspiracy[.]"). He argues that the recordings of conversations between him and the alleged government cooperator would support his defense if presented at trial. *Id.*

"A conspiracy is an 'agreement among the conspirators.'" *United States v. Rosenblatt*, 554 F.2d 36, 38 (2d Cir. 1977) (quoting *United States v. Falcone*, 311 U.S. 205, 210 (1940)). "The crux of a conspiracy is an agreement between two or more persons to join together to accomplish something illegal." *United States v. Lyle*, 919 F.3d 716, 737 (2d Cir. 2019). "Because federal conspiracy liability requires a meeting of the minds, . . . two people have to engage in the act of agreeing in order for this requirement to be met." *United States v. Bout*, 144 F. Supp. 3d 477, 485 (S.D.N.Y. 2015), *aff'd*, 666 F. App'x 34 (2d Cir. 2016) (quotation marks omitted and alterations adopted). "[A] person who enters into such an agreement while acting as an agent of the government, either directly or as a confidential informant, lacks the criminal intent necessary to render him a *bona fide* co-conspirator." *Id.* While conspirators do not need to have agreed on the details of their criminal enterprise, it must be shown that they agreed on the "essential nature of

the plan," as to the kind of criminal conduct contemplated. *Rosenblatt*, 554 F.2d at 38–39. For example to successfully prosecute a defendant who rented out a machine gun for bank robbery conspiracy, it must be shown that the defendant knew that a bank was to be robbed. *Id.* Such an agreement "may be tacit rather than explicit." *United States v. Zhou*, 428 F.3d 361, 370 (2d Cir. 2005) (internal quotation marks omitted).

The applicable conspiracy statute for Mr. Serna Sanchez's charge states that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 963. "To prove intent . . . the government must show knowledge, for knowledge is the foundation of intent." *United States v. Torres*, 604 F.3d 58, 66 (2d Cir. 2010) (quotation marks omitted). "To establish a conspiracy-to-import offense, the government is required to prove, *inter alia*, that the defendant knew or believed that the conspiracy involved narcotics bound for the United States." *United States v. Flores*, 945 F.3d 687, 712 (2d Cir. 2019). "[B]elief is tantamount to knowledge in the context of a sting operation . . . because punishing the target of a sting assumes the veracity of a defendant's beliefs insofar as it embraces the legal fiction that the defendant has engaged in a 'criminal' enterprise." *United States v. Nektalov*, 461 F.3d 309, 316 (2d Cir. 2006). "Thus, a defendant who 'believes' the representations made by informants in a sting can be said to 'know' of the underlying criminal enterprise even though the enterprise does not, in reality, exist." *Id.*

As a threshold matter, I note that the procedural context in which Mr. Serna Sanchez's motion was filed strongly undercuts his claim that the recordings support legal innocence. Previously in briefing, he insisted that the recordings themselves—rather than transcripts of the recordings—were "critical" to framing his defense.  Withdraw Mot. at 2. Now with the recordings

in hand, he offers no further explanation to support that claim. Indeed, the characterization of the recordings in Mr. Serna Sanchez's briefing predating and postdating his reacquisition of this evidence does not change.

I find Mr. Serna Sanchez's current characterization of the recordings' evidentiary value to be wholly misguided. The recordings—and the inferences they support—are incriminating and not exonerating. For example, while denying the establishment of conspiracy's agreement element, Mr. Serna Sanchez admits in briefing that "there are hours of discussions [in the recordings] of *how* to form such a conspiracy," Withdraw Suppl. at 3 (emphasis in original). Conversations about how to transport drugs into the United States, while not necessarily overt acts, form the basis of an agreement to form a conspiracy by suggesting unity of purpose and understanding among conspirators to accomplish specific objectives. *See United States v. Asch*, 775 F. App'x 15, 19 (2d Cir. 2019) (summary order) ("[Defendant] did not need to be present to further the conspiracy because '[a] conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense.' . . . It was sufficient that [defendant] used his law enforcement background to advise [conspirator] on how to commit the kidnapping[.]") (quoting *Salinas v. United States*, 522 U.S. 52, 63 (1997)).

Similarly, Mr. Serna Sanchez's arguments referencing a third-party submersible owner further supports, rather than undermines, his involvement in a criminal conspiracy. In briefing, the defendant argues that the "central premise of the defense" concerns a third party, "a man who owed Mr. Serna Sanchez a debt unrelated to the instant charge [who] also owned a narcotics trafficking submarine." Withdraw Suppl. at 3. Defendant suggests that his role was limited to obtaining the submarine from an individual who owed him money, and the submarine would then facilitate drug trafficking into the United States. *Id.* This argument essentially admits that Mr.

Serna Sanchez was additionally motivated to enter into a conspiracy to import drugs because he needed its profits to repay a debt he was owed. Defendant's briefing cites no legal authority suggesting that an individual facilitating another person's involvement in a conspiracy (in this case the owner of the submersible) is not themselves implicated in the conspiracy.

Finally, Mr. Serna Sanchez's argument that he was "persuaded . . . to enter into a conspiracy of [cooperator's] invention" also fails to demonstrate legal innocence. Withdraw Mot. at 2. As the Second Circuit observed, a defendant in a sting operation can violate a conspiracy-to-import offense even when such an enterprise does not exist. *See United States v. Nektalov*, 461 F.3d at 316. That defendant's criminal arrest and prosecution was due to a government cooperator does not exonerate Mr. Serna Sanchez's agreement to participate in a scheme to import narcotics. *See United States v. Cohen*, 427 F.3d 164, 166–67 (2d Cir. 2005) (upholding conspiracy conviction where "one-time ecstasy dealer turned government cooperator" contacted defendant's coconspirator). While Mr. Serna Sanchez implies that he will "tailor his trial strategy to accept[ing] responsibility for seeking [the government cooperator's] help to collect a debt for a transaction unrelated to the indictment," and to "avoid assassination," Withdraw Mot at 1–2, this argument indicates that Mr. Serna Sanchez joined the conspiracy because he wanted help with other matters. That Mr. Serna Sanchez agreed to "accomplish something illegal" only because he wanted help with something else does not invalidate that such an agreement to accomplish something illegal was formed. *See United States v. Lyle*, 919 F.3d at 737; *see also Cohen*, 427 F.3d at 168 (affirming conspiracy conviction where the Drug Enforcement Agency recorded a conversation between a government cooperator and conspirator in which conspirator described forming an agreement to smuggle drugs with defendant).

In addition to questioning Mr. Serna Sanchez's characterization of the recordings as exculpatory, the government points to his "inculpatory *pro se* letters to the Court admitting his mistakes and seeking leniency." Withdraw Opp'n at 6.[4] Indeed, Mr. Serna Sanchez has repeatedly made *pro se* submissions at various stages of his criminal proceeding while he has been represented by counsel. While the Sixth Amendment gives criminal defendants the right to counseled or *pro se* representation, *Faretta v. California*, 422 U.S. 806, 834–35 (1975), a "defendant has . . . no right to 'hybrid' representation in which he is represented by counsel but supplements his lawyer's work with selected pro se submissions." *United States v. Hage*, 74 F.4th 90, 93–94 (2d Cir. 2023) (quoting *United States v. Rivernider*, 828 F.3d 91, 108 (2d. Cir. 2016)). While a court has discretion to allow *pro se* appearances from a counseled defendant, it is not permissible to switch between *pro se* and counseled modes at will as this would undermine the relevant rules of procedural and substantive law. *Id.* Therefore, I will not consider Mr. Serna Sanchez's November 29, 2023 letter to the Court, ECF No. 32, in my assessment of his legal innocence.

Finally, Mr. Serna Sanchez's allocution alone weighs heavily against a finding that his plea was not entered knowingly. *See Johnson v. United States*, No. 06-CR-10, 2018 WL 8335489, at *4 (E.D.N.Y. May 9, 2018) (listing several factors indicating that defendant's guilty plea was knowingly and voluntarily made). At his change-of-plea hearing, Mr. Serna Sanchez admitted under oath that he "agreed with others to distribute and import [more than five kilograms of] cocaine into the United States." Plea Tr. at 15:1–15:21. As the Second Circuit has explained, Rule

---

[4] While admitting that I may infer his "moral but not legal guilt" from these submissions, Suppl. Reply at 5, Mr. Serna Sanchez also points to "[c]onversations which were not recorded," Withdraw Suppl. at 4, as his saving grace. Without any indication of what these conversations consisted of or what they imply, I find that Mr. Serna Sanchez identifies no evidence in the record that suggests his legal innocence.

11's requirement that the court assess the factual basis for a plea does not require that "the court be satisfied that a jury would return a verdict of guilty" or that the court "weigh evidence to assess whether it is even more likely than not that the defendant is guilty." *United States v. Maher*, 108 F.3d 1513, 1524 (2d Cir. 1997). Instead, Rule 11 "requires the court to assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty." *Id.* Here, were a jury to accept as fact the statements described by the government and admitted by Mr. Serna Sanchez at his plea colloquy, "a guilty verdict would follow." *United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001). Rule 11's requirement that the court assess the factual basis for a plea "requires no more." *Id.* Defendant's minimization of his actions is contradicted by all of his statements during the plea proceeding and, in particular, by his allocution to the elements of the conspiracy crime to which he pled guilty. During the plea proceeding, I confirmed that defendant understood "the nature of [the] charge to which the defendant [was] pleading," as required by Fed. R. Crim. P. 11(b)(1)(G). *See* Plea Tr. at 7:5–8:8. Defendant then allocuted to the elements of the conspiracy offense charged in the Indictment under oath. *Id.* at 15:1–16:14. At the conclusion of the plea proceeding, I found that Mr. Serna Sanchez's allocution provided factual support for the essential elements of the offense to which he pled guilty and accepted his plea. *Id.* at 15:25–16:1.

The government's proffered evidence, coupled with Mr. Serna Sanchez's admission in his motion that he was "persuaded . . . to enter into a conspiracy," Withdraw Mot. at 2, provides a sufficient factual basis for his guilty plea to one count of International Cocaine Distribution Conspiracy. I find that Mr. Serna Sanchez has raised no effective argument that he is legally innocent. Therefore, this factor weighs against him.

14

2. Voluntariness

Mr. Serna Sanchez also argues that his guilty plea was not voluntary because his previous counsel Attorney Diaz provided ineffective assistance of counsel. *See* Withdraw Mot. at 2–3 ("He was consistently pressured, both by his own counsel and incredibly the prosecutor herself as he stood behind bars . . . to plead guilty that day or go to trial."). "Ineffective assistance of counsel during plea negotiations can invalidate a guilty plea and make granting withdrawal appropriate, to the extent that the counsel's deficient performance undermines the voluntary and intelligent nature of defendant's decision to plead guilty." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005).

In theory, this could be a basis for a finding that the guilty plea was involuntary. *See Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). "It does not follow, however, that all inducements for a defendant to plead guilty render either a plea or the consequent waiver of the right to trial by jury involuntary." *McMahon v. Hodges*, 382 F.3d 284, 290 (2d Cir. 2004). "'Voluntary' for purposes of entering a lawful plea to a criminal charge has never meant the absence of benefits influencing the defendant to plead." *United States v. Marquez*, 909 F.2d 738, 742 (2d Cir. 1990). Indeed, the Supreme Court has instructed that, with regard to voluntariness, a guilty plea "must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." *Brady v. United States*, 397 U.S. 742, 755 (1970) (internal quotation marks omitted).

Defendant's briefing alleges ineffective assistance of counsel in two forms. First, Mr. Serna Sanchez alleges that his prior counsel Attorney Diaz never permitted him to review any discovery,

including the recordings discussed above. *See* Withdraw Suppl. at 1 ("Mr. Serna Sanchez requested the Court replace Mr. Diaz as his lawyer because . . . Mr. Diaz did not review the discovery with him[.]"); Suppl. Reply at 5 ("Jose has provided substantial evidence that his decision was involuntary and influenced by . . . a failure by counsel to review the evidence against him"). Second, the defendant alleges that Attorney Diaz and the government improperly orchestrated an effort to pressure him into pleading guilty. In response to these claims, the government requested that I order an affidavit from Mr. Serna Sanchez's prior counsel, citing *Sparman v. Edwards*, 154 F.3d 51, 52 (2d Cir. 1998) (observing that a court should "offer the assertedly ineffective attorney an opportunity to be heard and to present evidence, in the form of live testimony, affidavits, or briefs" when a claim of ineffective assistance is made).

<u>Discovery</u>

An attorney is obligated to review discovery with his client. *See* Model Rules of Professional Conduct 1.4 ("(a) a lawyer shall: (4) promptly comply with reasonable requests for information"). I find that the record clearly demonstrates that Attorney Diaz met his discovery obligations. As discussed in my analysis of the legal innocence factor, Mr. Serna Sanchez has not presented a plausible argument that the recordings would establish a defense. Therefore, even a hypothetical failure to play the recordings would not have been prejudicial.[5] Furthermore, the record demonstrates that Attorney Diaz did meet with Mr. Serna Sanchez and review discovery with him.

---

[5] Attorney Cohn's statements at the August 20, 2025 status conference suggest that Mr. Serna Sanchez had reviewed the recordings with prior counsel. Specifically, Attorney Cohn stated that his client had explained to him that the recordings would support a defense, and cited this as a basis for a motion to withdraw. *See* ECF No. 65. As Attorney Cohn stated that he did not possess the recordings, Mr. Serna Sanchez must have provided his counsel with that characterization.

The Protective Order governed highly sensitive documents in this case. It stated that "[t]he Defendant may review . . . sensitive discovery material . . . only in the presence of Defense Counsel or Defense Staff" and that Mr. Serna Sanchez "is prohibited from having possession, custody, or control of the Sensitive Discovery Material, and any and all copies, notes, transcripts, documents and other information and materials derived or prepared from the Sensitive Discovery Material." Protective Order at 3. Furthermore, the Protective Order appears to provide discretion over whether such Sensitive Discovery Material is even shared in the first place: "If Defense Counsel *chooses* to share the Sensitive Discovery Material with the Defendant . . . that Sensitive Discovery Material must be shared in the presence of Defense Counsel or Defense Staff." *Id.* at 3 (emphasis added).

According to Attorney Diaz, he met with Mr. Serna Sanchez on March 1, 2024, and reviewed discovery with him, including the disputed recordings. Diaz Decl. ¶¶ 6-7. Attorney Diaz states that he also met with Mr. Serna Sanchez on April 12, 2024 and April 17, 2024, and they discussed discovery productions at this meeting. *Id.* ¶ 8. Attorney Diaz states that he and associate counsel Sarah Speis again met with Mr. Serna Sanchez at Metropolitan Detention Center ("MDC") on May 7, 2024 and May 14, 2024. ¶¶ 13–14. On May 30, 2024, Attorney Diaz and Ms. Speis allegedly met with Mr. Serna Sanchez "for over 5 hours" in the Special Housing Unit at the MDC, and counsel were prepared "with all the discovery for [Mr. Serna Sanchez's] review and in preparation for trial." *Id.* ¶ 17.

Mr. Serna Sanchez largely disputes Attorney Diaz's declaration. According to Mr. Serna Sanchez, Attorney Diaz did not review discovery with him during the March 1, 2024 meeting. Suppl. Reply at 1. To support this assertion defendant points to an email he sent to Attorney Diaz on March 18, 2024 with the text "solicito el discovery ????" *Id.* Mr. Serna Sanchez argues that this

email was sent to ask Attorney Diaz if he had requested discovery in the case, which would be illogical if they had already reviewed discovery together during the March 1, 2024 meeting. Furthermore, Mr. Serna Sanchez argues that the April 12, 2024, April 17, 2024, and May 14, 2024 meetings "never happened." *Id.* at 2–3. He points to a letter dated April 19, 2024 that he sent to Attorney Diaz complaining, "As of the date of this letter it has been 399 days and yet no discovery has been furnished . . . Although you are my defense attorney, I am the defendant and I am entitled to review all materials in conjunction with your professional assessment." *Id.* at 2–3. Mr. Serna Sanchez argues that these emails "show that [he] was complaining about not reviewing the discovery with no documented, contemporaneous push back from Diaz." *Id.* at 5. Finally, Mr. Serna Sanchez argues that the "over 5 hour" meeting with Attorney Diaz on May 30, 2024 in fact "last[ed] less than one hour." *Id.* at 3.

My review of the record leads me to conclude that Mr. Serna Sanchez had the opportunity to review discovery in this case. First, it is undisputed that Attorney Diaz had access to discovery materials. *See* Withdraw Mot. Decl. ¶ 4 ("Almost immediately after the August 20 appearance, I contacted predecessor counsel and requested his complete file. He provided it on Wednesday, August 27 and I immediately noticed neither the recordings nor extradition papers in it."). This production from Attorney Diaz was missing recordings and some extradition documents, apparently misplaced, which Attorney Cohn then secured from the Federal Defenders of New York. *See* ECF No. 70. Defendant does not dispute that the May 7, 2024 meeting with Attorney Diaz and associate counsel Speis occurred, which suggests that some discovery was reviewed with defendant. Furthermore, even if the May 30, 2024 meeting was "less than one hour," Mr. Serna Sanchez appears to have had the opportunity to review discovery at that meeting. Indeed, Attorney

Diaz affirms that Mr. Serna Sanchez had already reviewed discovery by the time of that meeting. Diaz Decl. ¶ 17.

Furthermore, many of Mr. Serna Sanchez's arguments regarding discovery are unsupported by any evidence. As a preliminary matter, Attorney Diaz was in fact barred from giving copies of discovery materials to Mr. Serna Sanchez, which appears to be what the defendant argues in many of his contemporaneous communications. *See* Suppl. Reply at 2 ("As of the date of this letter it has been 399 days and yet no discovery has been *furnished*.") (emphasis added). Further, while Mr. Serna Sanchez points out that "[t]ypically, when a lawyer visits the SHU, they sign into a log with the date and times of their entry and departure," he has provided no evidence that the visitation logs contradict Attorney Diaz's declaration. Suppl. Reply at 3. Finally, Mr. Serna Sanchez submitted a *pro se* sentencing memorandum on May 28, 2025 that states that he personally reviewed transcripts of his conversations with the government cooperator. *See* ECF No. 61 at 1 ("A comprehensive review of the evidence will demonstrate that a lower sentencing level is warranted . . . Defendant expressly stated their lack of ability to engage in any such arrangement, as documented in the trasncripts [sic].").

Pre-Plea Pressure

Mr. Serna Sanchez's allegations about Attorney Diaz's conduct prior to the guilty plea do not create a "substantial reason" to deviate from the norm of accepting the "presumption of accuracy" attached to his statements at the plea hearing. *United States v. Rivernider*, 828 F.3d at 105. Beginning with the motion to compel through the filing of supplemental briefing in support of his motion to withdraw, Mr. Serna Sanchez has levelled increasingly serious allegations against Attorney Diaz and the government regarding Mr. Serna Sanchez's decision to plead guilty. In an affirmation accompanying the motion to withdraw, Mr. Serna Sanchez's counsel provides the

following description regarding a meeting between the government and Mr. Serna Sanchez before his guilty plea hearing on June 12, 2024:

> [The government attorney] emphasized that the meeting was entirely proper and that there were witnesses to its propriety. She continued in an emotional and somewhat bitter tone that she had participated in the meeting as a courtesy to Mr. Serna Sanchez. I replied that I was not accusing her of any impropriety. She responded that although that was accurate, "it sounded as though I was planning (such an accusation)." Withdraw Mot. Decl. ¶ 3.

Attorney Cohn stated that he "unsure if [the government attorney's] conduct was appropriate." *Id.* Rather, he speculated that it was "more likely that then-defense counsel was at fault, if any fault can be assigned by permitting [the government attorney] to speak to Mr. Serna Sanchez under circumstances which created a very high likelihood he would feel increased pressure to change his plea that day." *Id.* In his most recent reply brief, Mr. Serna Sanchez now argues that "the most logical explanation [for the pre-plea meeting] . . . is that [the government attorney] and [Attorney Diaz] engineered the surprise-to-Jose day-of-plea meeting at least in part to persuade Jose to plead guilty." Suppl. Reply at 5.

Mr. Serna Sanchez offers no argument as to why Attorney Diaz would join forces with the prosecution against his client. Furthermore, counsel was under no obligation to inform the court of last-minute negotiations at the plea hearing once Mr. Serna Sanchez made his mind up to plead guilty. Throughout the pre-plea meeting, defendant was always accompanied by his then-counsel. Withdraw Mot. Decl. ¶ 2. It is well established that pressure and a defense counsel's advice to plead guilty does not invalidate a guilty plea. *See United States v. Boamah*, No. 14-CR-0673, 2017 WL 2799164, at *8 (S.D.N.Y. June 26, 2017) (finding that defense counsel's advice to plead guilty based on his assessment of the strength of the government's case against defendant was "not only appropriate, but warranted"); *United States v. Farooq*, No. 19-CR-100, 2020 WL 1083624 at *5 (E.D.N.Y. Mar. 6, 2020), *aff'd*, 58 F.4th (2d Cir. 2023) (holding that "[d]efendant's allegations of

coercion by the prosecution and his attorney do not exceed what the Second Circuit has deemed non-coercive" where defense counsel and prosecution stated that defendant was facing fourteen years in prison if he went to trial). "Guilty pleas are generally the result of a weighing of highly undesirable-coercive-alternatives rather than a soul-cleansing urge to confess." *United States v. Juncal*, 245 F.3d at 173.

Indeed, Mr. Serna Sanchez's argument appears to confuse coercion "in a layman's sense" with coercion "in a legal sense." *Id.* at 172 (describing legal coercion as "physical force or threat of physical force . . . the improper use of economic power to compel another to submit to the wishes of one who wields it" and "mental coercion, such as being gripped by fear of the death penalty or hope of leniency" (citing Black's Law Dictionary 252 (7th ed. 1999) (defining "coercion"); *Brady v. United States*, 397 U.S. at 750)). As for Mr. Serna Sanchez's declaration that he was "afraid" during the plea hearing and did not understand the proceedings, "virtually every criminal defendant encounters additional sources of stress that flow from a criminal prosecution and its attendant consequences." *United States v. Morton*, No. 16-CR-371-5, 2020 WL 6151265, at *14 (S.D.N.Y. Oct. 20, 2020). This is particularly true when a defendant is faced with "two unpalatable options": pleading guilty or proceeding to trial. *United States v. Doe*, 537 F.3d 204, 212 (2d Cir. 2008). Therefore, it is "commonplace" for defendants in this position to "feel 'coerced' in the lay sense of the word," but that does not make their guilty pleas involuntary. *United States v. Juncal*, 245 F.3d at 174. "When a guilty plea is challenged as being the product of coercion, our concern is not solely with the subjective state of mind of the defendant, but also with the constitutional acceptability of the external forces inducing the guilty plea." *United States v. Davis*, 48 F. App'x 809, 812 (2d Cir. 2002) (summary order) (quoting *Iaea v. Sunn*, 800 F.2d 861, 866 (9th Cir. 1986)).

Mr. Serna Sanchez's conclusory allegations that Attorney Diaz's representation was deficient also fail. *See United States v. Moree*, 220 F.3d 65, 71 (2d Cir. 2000) (noting that "commonplace" allegations that a court-appointed attorney "is not paying sufficient attention to his case, has not come to see him in prison, has not undertaken sufficient investigation, is not making necessary motions, is not calling witnesses, or is trying to induce the defendant to plead guilty" do not "ipso facto result[ ] in a conflict of interest"). Contrary to defendant's argument that the circumstances of his plea were "so unfair as to shock the conscience," Withdraw Mot. at 2, a review of the record surrounding Mr. Serna Sanchez's decision to plead guilty does not indicate any impropriety.

The Plea Allocution

Finally, the plea allocution weighs heavily against Mr. Serna Sanchez's assertion that his plea was involuntary. A defendant's testimony during his plea "carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made." *United States v. Juncal*, 245 F.3d at 171; *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea."). Mr. Serna Sanchez raises the fact that he read from "prepared" remarks at the plea allocution. Suppl. Reply at 4. It was entirely appropriate for Attorney Diaz to have his client do so here. *See*, *e.g.*, *Fernandez v. United States*, No. 12–CR–445, 2016 WL 4735370, at *4 n.2 (S.D.N.Y. Sept. 12, 2016) (noting that counsel often prepare written statements describing factual basis for guilty plea) (collecting cases); *Johson v. Smith*, No. 08-CV-2979, 2014 WL 1514354, at *6 (E.D.N.Y. Apr. 16, 2014) (describing plea script as "ordinary action[] taken by defense lawyers"). I observed Mr.

Serna Sanchez's reliance on a prepared statement during his plea allocution, and he confirmed that everything he read to me was true and something that he told Attorney Diaz. Plea Tr. at 16:7–16:14.

Mr. Serna Sanchez argues that *United States v. Johnson*, 850 F.3d 515 (2d Cir. 2017) supports the proposition that defendants can readily withdraw guilty pleas made without plea agreements. Withdraw Mot. at 2. However, the Second Circuit's decision *Johnson* did not turn on the absence of a plea agreement. Instead, the defendant's guilty plea was invalidated because the district court judge repeatedly emphasized the court's discretion over sentencing and post-release conditions at the plea colloquy when the applicable statute in fact provided for a mandatory sentence of life imprisonment. *Id.* at 519. The record indicated that defendant's counsel did not understand that his client's decision to plead guilty would necessarily result in a life sentence. *Id.* at 521. Under this set of facts, the only logical option for the defendant was to contest his guilt at trial. In contrast to *Johnson*, I did not provide a contradictory assessment of the consequences of pleading guilty at Mr. Serna Sanchez's plea hearing. While defense counsel repeatedly points to the absence of a plea agreement, pleading guilty without a plea agreement does not constitute ineffective assistance of counsel. Because Mr. Serna Sanchez pled guilty without a plea agreement, his Sentencing Guidelines calculation will be lower due to his acceptance of responsibility, he maintains the ability to challenge the applicable Sentencing Guidelines sections, and maintains the right to appeal his sentence. Notably, Mr. Serna Sanchez could have faced a significant trial penalty should he have elected to go to trial.

I find that the submission from Attorney Diaz, taken together with the entire record, supports a finding that Mr. Serna Sanchez voluntarily entered into the guilty plea and no evidentiary hearing is required. *See Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001) (finding

that in-person hearing was not required after, at the district court's request, the record was supplemented by a detailed affidavit from trial counsel that contradicted petitioner's version of the events). Ultimately, I find that Mr. Serna Sanchez has not raised a significant question about the voluntariness and validity of his original plea and this factor weighs against withdrawal.

3. Amount of Time Elapsed and Prejudice

I next consider the amount of time that has elapsed between Mr. Serna Sanchez's guilty plea and the motion to withdraw. More than a year has passed since he pled guilty on June 12, 2024. Courts in this circuit have found that significantly shorter delays weigh against granting a defendant's motion to withdraw. *See United States v. Dean*, 591 F. App'x 11, 14 (2d Cir. 2014) (four-month delay weighed against motion); *United States v. Thomas*, 651 F. Supp. 3d 685, 693 (S.D.N.Y. 2023) (same); *see also United States v. Kalichenko*, No. 14-CR-95, 2019 WL 3287976, at *4 (E.D.N.Y. July 22, 2019) (collecting cases). This factor weighs against defendant.

Finally, there is no burden on the government to show that it would be prejudiced by a withdrawal where, as here, the defendant has not shown sufficient grounds to justify withdrawal. *See United States v. Gonzalez*, 647 F.3d 41, 56 (2d Cir. 2011) ("There is no burden on the government to show that it would be prejudiced by the withdrawal of the guilty plea unless the defendant has shown sufficient grounds to justify withdrawal.") (collecting cases).

As all factors weigh against withdrawal, Mr. Serna Sanchez's motion is denied.

## CONCLUSION

For the reasons set forth above, Mr. Serna Sanchez's motion to withdraw his guilty plea pursuant to Rule 11(d)(2)(B) is denied because he has not shown a fair and just reason for withdrawal. Because defendant has failed to present any significant question concerning the voluntariness or validity of the plea, no evidentiary hearing is warranted.

SO ORDERED.

/s/
Allyne R. Ross
United States District Judge

Dated: December 6, 2025
      Brooklyn, New York